**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-00725-MSK-NYW

BIG O TIRES, LLC, a Nevada limited liability company,

      Plaintiff,

v.

C&S TIRES, INC., a Nevada corporation,
CRAIG A. BRADY, an individual, and
SHERI E. BRADY, an individual,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Plaintiff Big O Tires, LLC's Renewed Motion for Default Judgment Against All Defendants ("the Renewed Motion for Default Judgment" or "Renewed Motion") [#39, filed Feb. 27, 2017],[1] which was referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1); the Order Referring Case dated April 27, 2016 [#17]; and the Memorandum dated March 30, 2017 [#41]. Having now reviewed the Renewed Motion for Default Judgment, the originally filed Motion for Default Judgment [#24],[2] the supporting

---

[1] Where the court refers to the filings made in Electronic Court Filing ("ECF") system in this action, it uses the convention [#___] and uses the page number as assigned by the ECF system, except when citing from the transcript of the evidentiary hearing. When citing the transcript of the evidentiary hearing, this court uses the ECF docket number, but cites to the page and line numbers as assigned in the original transcript.

[2] In its Renewed Motion for Default Judgment, Plaintiff states that it "incorporates by reference its motion for default judgment" and cites Fed. R. Civ. P. 10(c). Rule 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any

evidence to both motions including the evidence taken at an August 1, 2016 hearing as to the first Motion for Default Judgment, and the applicable law, this court respectfully **RECOMMENDS** that the Motion for Default Judgment be **GRANTED** for the following reasons.

## BACKGROUND

Plaintiff Big O Tires, LLC ("Plaintiff" or "Big O"), is a Nevada company that transacts business in Colorado and has an address at 5025 Florence Street, Unit A, Denver, Colorado 80238. [#1 at ¶ 1]. Big O offers franchises of retail tire and automotive stores [*id.* at ¶ 8], and initiated this action against Defendants C&S Tires, Inc. ("C&S"), Craig A. Brady ("Mr. Brady"), and Sheri E. Brady ("Ms. Brady") (collectively, "Defendants"), former Big O franchisees on March 28, 2016. [#1]. In the Complaint, Big O asserts four causes of action: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1) against all Defendants; (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1) against all

---

other pleading or motion." Fed. R. Civ. P. 10(c). A pleading is defined as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). Under the plain language of Rule 10(c), incorporation by reference only extends to incorporating matters in the context of a pleading. Big O does not cite (nor could the court find) any authority that extends Rule 10(c) to incorporation of a prior motion into a later motion, or incorporating this court's recommended findings into a Renewed Motion for Default Judgment. *See Wood v. World Wide Ass'n of Specialty Programs and Schs., Inc.*, No. 2:06-cv-708 TS, 2007 WL 5823646, at *1 (D. Utah Feb, 22, 2007) (holding that "there is no provision in the Rules for incorporation of statements or material into a complaint by reference unless they are either contained in a pleading or attached as an exhibit to a pleading."). Indeed, a court in this District has previously held that a party "may not incorporate by reference his original Complaint into the amended complaint, nor may he incorporate previously filed motions and papers." *See Murphy v. Colo. Dep't of Corrections*, No. 06-cv-01948-REB-BNB, 2007 WL 2028763, at *2 (D. Colo. July 11, 2007). Nevertheless, in order to facilitate a more expedient resolution, this court will not strike the Renewed Motion for Default Judgment but will read the two motions together, and will repeat (where appropriate) its prior Recommendation herein.

Defendants; (3) breach of contract against C&S; and (4) breach of the guaranty agreements contained in Schedule 3 to the Agreement against Mr. Brady and Ms. Brady. [#1]. In the Complaint, Big O averred that Defendants owed it $6,424.20 for product purchases, royalties, and the national advertising fund. [*Id.* at ¶ 23].

Big O served the summons and Complaint on Defendants on March 31, 2016, making a responsive pleading due on or before April 21, 2016. [#10, #11, #12]. None of the Defendants answered or otherwise responded. Big O then moved for the entry of default on April 25, 2016 [#13], which was denied for being non-compliant with Rule 55 of the Federal Rules of Civil Procedure. [#19]. Big O filed a second Motion for Entry of Default, and the Clerk of the Court entered default against each of the Defendants on May 5, 2016. [#23]. Big O then filed its original Motion for Default Judgment on June 28, 2016, seeking $6,327.60 for product purchases, royalties, and the national advertising fund [#24 at ¶ 25]; damages for trademark infringement in the amount of $7,800.00 in reasonable royalties for trademark infringement for the period between March 31, 2015 and May 5, 2015; attorney fees in the amount of $12,341.00 and costs of $566.39; and pre-judgment interest in the amount of $1,182.65, for a total of $28,217.54 as of the filing of the instant Motion; and certain injunctive relief.[3] [#24]. In support of the Motion for Default Judgment, Big O submitted a Declaration from its counsel, Harold R. Bruno, III, that set forth facts regarding the filing and service of the Complaint; a Declaration from Rick O'Neil, a Western Division Vice President, who provided information regarding Big

---

[3] There is no certificate of service attached to the Motion for Default Judgment or Renewed Motion for Default Judgment, nor any other indicia to establish that any of the Defendants have been served with a copy of the Motion. [#24, #39]. However, service in this instance is not required because the parties against whom the default judgment is sought have not appeared personally or by representative in this action. Fed. R. Civ. P. 55(b)(2).

O's Marks and Trade Dress; the actions of Big O post-termination; and the calculation of damages sought by Big O. [#24-2]. Mr. O'Neil's Declaration also attached registration records from the United States Patent and Trademark Office [#24-2 at 7-16]; a copy of the Franchise Agreement [#24-2 at 17-75]; a copy of the First Amendment to the Franchise Agreement [*id.* at 76-100]; a copy of the Second Amendment to the Franchise Agreement with Reaffirmation of Guarantors [*id.* at 101-209]; a copy of the letter dated April 15, 2015 sent by Big O to Mr. Brady, reflecting its belief that C&S continued to use the Marks and Trade Dress [#24-2 at 110-111]; and a copy of the letter dated May 1, 2015 sent by Big O to Mr. Brady[4] [#24-2 at 114-115].

After the original Motion for Default Judgment was referred to the undersigned Magistrate Judge for Recommendation [#25], this court set an evidentiary hearing on the Motion for Default Judgment [#26, #27, #28]. At the hearing, the court admitted exhibits 4, 5, 6, 7, 8, 9, 10, 11 and 12 of the Amended Exhibit List [#31-1], and took testimony from James A. Bull, a Division Vice President of Big O. [#33; #34 at 3:10–12]. After review of the operative pleading and Motion for Default Judgment, this court respectfully recommended that the original Motion for Default Judgment be denied without prejudice on January 17, 2017. [#38]. This court found that it could not recommend default judgment because evidence presented as to the calculation of damages provided by Big O through its Motion for Default Judgment and the testimony at the hearing was insufficient to establish a precise quantum of damages. [*Id.* at 20-21]. This court further declined to address any liability on the part of Defendants Craig Brady and Sheri Brady

---

[4] For exhibits that are attached to Mr. O'Neil's Declaration that are duplicative of exhibits that were also attached to the Complaint, this court refers to the exhibits as attached to the Complaint because their filing as separate documents (instead of a single, 122 page exhibit) facilitates ease of use.

as individual guarantors, reserving that issue for a renewed motion for default judgment, if any. [*Id.* at 24-25].

On February 27, 2017, Big O filed this Renewed Motion for Default Judgment. In reviewing the Renewed Motion for Default Judgment, this court determined that it was not compliant with Local Rule 54.3, which requires that a request for an award of attorney's fees include, for each person for whom fees are claimed, a summary of relevant qualifications and experience, and Big O has also not provided any information as to why the requested billing rates were reasonable. Rather than simply recommend denial of any attorney's fees and costs, *see Reg'l Dist. Council v. Mile High Rodbusters, Inc.,* 82 F. Supp. 3d 1235, 1246 (D. Colo. 2015) (declining to entertain requests for attorneys' fees for two attorneys for whom "a summary of relevant qualifications and experience" was not submitted), this court requested that Plaintiff supplement its Renewed Motion for Default Judgment with the missing information. [#42]. Big O submitted its Supplement on May 22, 2017. [#44].

## LEGAL STANDARDS

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, a party may apply to the court for a default judgment after a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(a), (b)(2). A court may conduct hearings to conduct an accounting; determine the amount of damages; establish the truth of any allegation by evidence; or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

There is no right to a default judgment, and whether to enter a default judgment is within the discretion of the court. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (citing

*Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment.")). In determining whether a default judgment is warranted, the court must first consider whether it has jurisdiction over the subject matter and the defendants. *See Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1202-03 (10th Cir. 1986); *CrossFit, Inc. v. Jenkins,* 69 F. Supp. 3d 1088, 1093 (D. Colo. 2014). It is well established that a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action. *United States v. 51 Pieces of Real Prop.*, 17 F.3d 1306, 1309 (10th Cir. 1994). Plaintiff bears the burden of establishing jurisdiction.

The court then must consider whether the well-pleaded factual allegations in the complaint support a judgment on the claims against the defaulting defendants. 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998) ("a party in default does not admit mere conclusions of law"); *see also Nishimatsu Constr. Co.*, 515 F.2d at 1206-08 (vacating district court's entry of default judgment because the pleadings were insufficient to support the judgment). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co.*, 515 F.2d at 1206. The well-pleaded facts of a complaint are deemed true, as are any undisputed facts set forth in affidavits and exhibits. *See Grady v. Swisher*, No. 11-cv-02880-WYD-KLM, 2014 WL 3562794, at *12 (D. Colo. July 18, 2014); *Samuels v. Feiner Trinh, Int'l, LLC*, No. 10-cv-02574-MEH, 2012 WL 3545275, at *1 (D. Colo. Aug. 15, 2012). The court may also take evidence at a hearing to establish the truth of any allegation. Fed. R. Civ. P. 55(b)(2)(B). In addition, the entry of default does not establish the amount of damages that is reasonable. Damages may be awarded only if

the record adequately reflects the basis for the award as supported by the evidence in the record. *Klapprott v. United States*, 335 U.S. 601, 612 (1949); *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269 (D. Kan. 2016).

## FINDINGS OF FACT

The following facts are drawn from the Complaint and Demand for Injunctive Relief; information and filings on the court's Electronic Court Filing ("ECF") docket; and evidence presented at the August 1 hearing.

(1)     Big O is a Nevada company that transacts business in Colorado and has an address at 5025 Florence Street, Unit A, Denver, Colorado 80238.  [#1 at ¶ 1].

(2)     Effective March 31, 2000, C&S entered a franchise agreement ("Franchise Agreement") with Big O, executed by Mr. Brady on behalf of C&S, as President. [#1-2 at 42].[5]

(3)     C&S operated a Big O franchise at 828 South Boulder Highway, Henderson, Nevada 89015.  [#1 at ¶ 17].  That franchise was known as store 28813.  [#34 at 26:13-16].

(4)     Mr. Brady and Ms. Brady executed Schedule 2 of the Franchise Agreement, verifying ownership interest in the franchisee [#1-2 at 44], and Schedule 3, personally guaranteeing "each and every covenant, payment, agreement and undertaking on the part of the Franchisee contained and set forth in or arising out of such Franchise Agreement."  [*Id.* at 45-48].

---

[5] A duplicate copy of the Franchise Agreement can be found at [#37-3]; however, for ease of reference and consistency, this court cites to the Franchise Agreement attached to Big O's Complaint, *see* [#1-2].

(5)     Big O owns the following trademarks and service marks ("the Marks") that are subject to this action:  "BIG-O," Registration No. 993,415, registered September 24, 1974; "BIG O," Registration No. 994,466, registered October 1, 1974;"BIG O TIRES" and Design, Registration No. 1,611,160, registered August 28, 1990; "BIG O TIRES," Registration No. 2,411,926, registered December 12, 2000; and "EXTRA CARE" and Design, Registration No. 1,417,730, registered November 18, 1986.  [#1 at ¶ 11].[6]  The Franchise Agreement, among other things, licensed to C&S the use of Marks, including "BIG-O"; "BIG O," "BIG O TIRES," and "EXTRA CARE".  [#1-2 at 10; 12 at § 2.01; 18 at ¶ 9; 55-56 (Schedule 6)].

(6)     Big O uses the Big O Tires and Design, Registration No. 1,611,160, **BIG O TIRES** on its signs, both in the interior and exterior of its buildings, and in-store signing and communication pieces.  [#34 at 5:4-12].

(7)     *Extra Care* (Registration No. 73589583) is a branding program used to exemplify that beyond tires, Big O offers services like brakes, struts, alignments, other repairs.  [*Id.* at 5:21-6:4].

(8)     The Team You Trust is a market program that Big O has used for approximately six to seven years in media and internal branding and external branding to customers.  [*Id.* at 6:5-13].

---

[6]  Each of these Marks is contained in Schedule 6 of the Franchise Agreement, except for "BIG O TIRES," Registration No. 2,411,926, registered December 12, 2000 after the execution of the contract on or about March 30, 2000.

(9)     Big O also owns trade dress associated with its franchised locations, including decorative black and red stripes, a red and white interior, red and black employee uniforms, various point of purchase materials and displays and a distinctive font that is part of the design for Registration No. 1,611,160 (collectively, "Trade Dress").

(10)    The Franchise Agreement also regulates the use of the Trade Dress, which is defined as "Any shop or architectural designs, fixtures, improvements, signs, color schemes or other elements of the appearance of the Store which in any manner suggest affiliation of the Store or Premises with Big O, or the System." [#1-2 at 12].

(11)    The Franchise Agreement states, "Franchisee understands and agrees that any use of the Licensee Marks other than as expressly authorized by this Agreement, without Big O's prior written consent is an infringement of Big O's rights therein and that the right to use the Licensed Mark granted herein does not extend beyond the termination or expiration of this Agreement." [#1-2 at 11 ¶ 9.01].

(12)    The Franchise Agreement further provides "[t]his Agreement is accepted by Big O in the State of Colorado and shall be governed by and interpreted in accordance with Colorado law, which law shall prevail in the event of any conflict of law. Big O and Franchisee consent to personal and subject matter jurisdiction and venue in Denver, Colorado." [#1 at ¶ 7; #1-2 at 40 § 29.01].

(13)    The Franchise Agreement has another provision entitled "Jurisdiction" that provides, in pertinent part: "the parties consent to the exclusive jurisdiction of

either the Colorado state courts or the United States Federal District Court for the District of Colorado for any litigation relating to this Agreement or the operation of the Franchise Business thereunder." [#1-2 at 40 § 29.02].

(14)    The expiration date of the Franchise Agreement was March 31, 2010. [#1-2 at 7].

(15)    The Franchise Agreement was renewed by amendments to provide for an expiration date of March 31, 2015. [#1 at ¶ 16].

(16)    Big O and C&S entered a First Amendment to the Franchise Agreement ("First Amendment") on or about June 23, 2009. [#1-2 at 69].

(17)    A Second Amendment to Franchise Agreement with Reaffirmation of Guarantors ("Second Amendment") was effective February 22, 2010. [#1-2 at 85]. The termination of the Franchise Agreement identified by the Second Amendment was March 31, 2012. [*Id.* at ¶ 1].

(18)    The Second Amendment provided that each Guarantor reaffirms, confirms, ratifies, renews, accepts and adopts that their respective Guaranty shall remain in full force and effect throughout the term of the Franchise Agreement, as amended. [*Id.* at ¶ 2].

(19)    The Second Amendment was executed by both Mr. Brady on behalf of C&S and on behalf of himself, as an individual, and Ms. Brady. [#1-2 at 86-87].

(20)    The Parties entered a Third Amendment to the Franchise Agreement ("Third Amendment") that was signed by Mr. Brady, on behalf of C&S, and Big O. [#37-9 at 1]. The Third Amendment extended the term of the Franchise Agreement to March 31, 2015. [*Id.*; #34 at 11:8-12:6].

(21)    Mr. Brady and Ms. Brady reaffirmed their personal Guaranties as part of the Third Amendment. [#37-9].

(22)    The Franchise Agreement between Big O and Defendants terminated on March 31, 2015. [#1 at ¶ 18].

(23)    Defendants did not renew the Franchise Agreement and continued to use the Marks and the Trade Dress without permission in Henderson, Nevada. [*Id.* at ¶ 19].

(24)    Defendants' use of the Marks and Trade Dress continued until May 4, 2015. [#24-2 at ¶ 27].

(25)    On April 15, 2015 and May 1, 2015, Big O sent cease and desist letters to C&S and Mr. Brady, informing them that the continued use of the Marks amounted to infringement and a breach of Section 20 of the Franchise Agreement, and specifically that they had failed to comply with post-termination duties, such as payment of amounts due and owing, transferring telephone numbers, and providing customer lists, to Big O. [#1 at ¶¶ 20–22; #1-3, #1-4].

(26)    Despite these letters, Defendants did not cease using the Marks and Trade Dress until after the March 31, 2015 expiration date, nor did C&S sign over the telephone numbers or provide the customer lists by the May 4, 2015 deadline. [#1 at ¶ 22; #24-2 at ¶ 23].

(27)    C&S had not ceased identifying itself as a Big O Tire after March 31, 2015, and had not ceased as of on or about May 4, 2015. [#24-2 at ¶ 23].

(28)     When Mr. Bull visited the location in December 2015, the store had been de-identified and was operating as Henderson Tire and Auto. [#34 at 23:19-24:1].

(29)     Each defendant was served with a copy of the summons and complaint in this action on March 31, 2016. [#10, #11, #12].

(30)     None of the Defendants filed an answer or other responsive motion. Nor has any Defendant otherwise appeared in the action.

## ANALYSIS

### I.     Jurisdiction and Venue

#### A.     Subject Matter Jurisdiction

The court first considers whether it has subject matter jurisdiction over this action. Plaintiff asserts causes of action arising under federal law, namely violations of the Lanham Act for trademark infringement and unfair competition. *See* [#1 at 4-7]. Therefore, to the extent that there are viable federal claims in this action, the court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 1338(a) and (b), and 15 U.S.C. § 1121; and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).[7]

#### B.     Personal Jurisdiction

The court now turns to the issues of personal jurisdiction and venue. A plaintiff bears the burden of establishing personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008) (citing *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)). Under Tenth Circuit standards, the personal jurisdiction inquiry involves two parts. First, this court considers whether an applicable statute governs

---

[7] There is no basis for diversity jurisdiction in this matter, as the amount in controversy falls well below the $75,000 requirement. 28 U.S.C. § 1332; [#24].

service of process. *Id.* Next, the court considers whether exercise of personal jurisdiction comports with the constitutional requirements of the Due Process clause. *Id.* The federal Lanham Act does not provide for nationwide service. *See* 15 U.S.C. § 1051 *et seq.* Accordingly, this court looks to the Colorado long-arm statute to determine whether personal jurisdiction is proper. *CrossFit*, 69 F. Supp. 3d at 1094.

Colorado's long-arm statute is codified at Colo. Rev. Stat. § 13-1-124, and "confers the maximum jurisdiction permissible consistent with the Due Process Clause." *Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1308 (D. Colo. 2012) (citing *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)). To determine whether the exercise of personal jurisdiction comports with constitutional due process, the court analyzes whether Defendants have sufficient minimum contacts with Colorado, such that having to defend an action here would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be general or specific. *Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1199 (D. Colo. 2015). General jurisdiction arises when a defendant's contacts with a forum state are so continuous and systematic to essentially render it "at home" in a state. *See Daimler AG v. Bauman,* 134 S. Ct. 746, 761 (2014). Specific jurisdiction is jurisdiction particular to the instant action. "To determine whether the exercise of specific personal jurisdiction comports with due process, the court asks '(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend

traditional notions of fair play and substantial justice.'" *Matthys*, 104 F. Supp. 3d at 1199

(quoting *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013)).

While Big O avers that "Defendants have transacted business in Colorado," [#1 at ¶ 7],

there were no factual allegations contained in the Complaint or presented at the evidentiary

hearing that established that any of the Defendants have continuous and systematic contacts with

Colorado that would make them "essentially at home" in Colorado and subject to general

personal jurisdiction. Thus, the court turns to whether specific personal jurisdiction exists. The

original Franchise Agreement indicates that Big O's principal place of business is in Colorado.

[#1-2 at 8]. The original Franchise Agreement also provides that the agreement is executed by

Big O in Colorado. [*Id.* at § 29.01]. Nevertheless, there are no factual allegations that any injury

to Big O occurred in Colorado; C&S' franchise was located in Henderson, Nevada [#1 at ¶ 17]

and Defendants' tortious conduct occurred in Nevada. While tortious conduct in a foreign state

which causes injury in Colorado may be deemed to be an act committed in Colorado so as to

satisfy Colorado's long-arm statute, *Floyd's 99 Holdings, LLC v. Jude's Barbershop, Inc.*, 898 F.

Supp. 2d 1202, 1206 (D. Colo. 2012) (citing *D&D Fuller CATV Const., Inc. v. Pace*, 780 P.2d

520, 524 (Colo. 1989)), indirect economic injury borne by a corporation by virtue of the location

of its headquarters is insufficient to confer specific personal jurisdiction. *Grynberg v. Ivanhoe*

*Energy, Inc.*, 666 F. Supp. 2d 1218, 1234 (D. Colo. 2009), *as corrected* (Jan. 28, 2010). Indeed,

it is unclear from the record whether Big O even suffered indirect economic injury in Colorado.

Big O is now owned by TBC Corporation, a company based out of Palm Beach Gardens,

Florida. [#34 at 4:1-4]. The Second Amendment makes no mention of a principal place of

14

business for Big O in Colorado. [#1-2 at 85]. The cease and desist letters directed at Defendants originated out of Florida, not Colorado. [#1-3, #1-4].

Nevertheless, it is well-settled that a party may consent to personal jurisdiction and venue by agreeing to a forum selection clause. *Burger King v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985). The forum selection clause provides, in pertinent part: "Big O and Franchisee consent to personal and subject matter jurisdiction and venue in Denver, Colorado." [#1-2 at 40 § 29.01]. The following paragraph entitled "Jurisdiction" further provides "the parties consent to the exclusive jurisdiction of either the Colorado state courts or the United States Federal District Court for the District of Colorado for any litigation relating to this Agreement or the operation of the Franchise Business thereunder." [*Id.* at 40 § 29.02]. These terms remained unchanged in the First Amendment to the Franchise Agreement and, therefore, were "ratified, confirmed and reaffirmed by the Parties" on or about June 23, 2009. [*Id.* at 69 ¶ 19]. These terms also remained unchanged in the Second and Third Amendments. [*Id.* at 60-84]. Each of the individual Defendants agreed to be bound by the terms of the Franchise Agreement through the execution of their respective Guaranties that were reaffirmed again on March 23, 2010, in connection with the execution of the Second Amendment to the Franchise Agreement [*Id.* at 45, 86-87], and again with the Third Amendment to the Franchise Agreement [#37-9].

Read together, this court concludes that forum selection clauses are mandatory as they require the "exclusive jurisdiction" in either the state or federal court of Colorado for any litigation related to the Franchise Agreement or the operation of the franchise business. *See K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 500 (10th Cir. 2002); *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997).

Colorado courts as well as the Tenth Circuit follow the general rule that forum selection clauses will be enforced unless a party seeking to avoid its effect proves that enforcement would be unfair or unreasonable. *See Milk 'N' More, Inc. v. Beavert,* 963 F.2d 1342, 1346 (10th Cir. 1992) (holding that clear mandatory forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstance"); *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1158-59 (Colo. App. 2006). Therefore, this court concludes that it has personal jurisdiction over Defendants and venue is proper in this District. *See Big O Tires, LLC v. Felix Bros., Inc.*, 724 F. Supp. 2d 1107, 1114-15 (D. Colo. 2010).

## II.     Trademark Infringement and Unfair Competition

"Trademark infringement is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together as an action brought under 15 U.S.C. § 1125(a)(1)(B), commonly known as section 43 of the Lanham Act." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008). Both claims require the same elements: (1) a protectable interest in the Marks; (2) the use of identical or similar Marks in commerce; and (3) the likelihood of confusion arising from the use of an identical or similar Mark. *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014). If trademark infringement is established, a plaintiff may recover defendant's profits,[8] damages sustained by the plaintiff, and costs of the action as damages. 15 U.S.C. § 1117(a).

---

[8] For disgorgement of a defendant's profits for trademark infringement, a prevailing plaintiff must demonstrate actual damages or willful action. *Klein-Becker USA, LLC v. Englert,* 711 F.3d 1153, 1161 (10th Cir. 2013). Despite the allegations in the Complaint that Defendants were willful in their infringement [#1 at ¶ 33], Big O is not seeking the disgorgement of Defendants' profits. [#24].

In this case, Big O has established a protectable interest in the Marks by submitting proof of federal registration of each of them. [#24-2 at 7-16; #37-2]. *See also* 15 U.S.C. § 1115; *Drexel Enterprises, Inc. v. Richardson*, 312 F.2d 525, 527 (10th Cir. 1962) (observing that registration of a trademark is prima facie evidence of the validity of the mark and of the registrant's exclusive right to use it as specified in the certificate). Therefore, this court concludes that Plaintiff satisfies the first element of the test for trademark infringement and unfair competition.

With respect to the third element, "[i]t is well-settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement." *Steak n Shake Enterprises, Inc. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1077 (D. Colo. 2015), *aff'd*, No. 16-1010, 2016 WL 4743685 (10th Cir. Sept. 12, 2016). Indeed, when a franchisee continues to use protected marks after the termination of their agreement, "the potential for consumer confusion is greater than in the case of a random infringer." *See id.* This danger of confusion has been determined to satisfy the likelihood of confusion test for trademark infringement. *IHOP Franchising, LLC v. Tabel*, No. 13-2641-KHV-TJJ, 2014 WL 1767199, at *9 (D. Kan. Apr. 15, 2014), *report and recommendation adopted*, No. CIV.A. 13-2641-KHV, 2014 WL 1767191 (D. Kan. Apr. 30, 2014) (citing *Burger King Corp. v. Mason*, 710 F.2d 1480, 1493 (11th Cir. 1983)). Therefore, to the extent that Plaintiff establishes that C&S continued its business as Big O Tires and used the Marks after the expiration of the Franchise Agreement on March 31, 2015, the third element of the test for trademark infringement would be satisfied.

Thus, the operative inquiry facing this court is whether there are sufficient facts, taken as true, to establish that C&S continued the use of Big O's trademarks after March 31, 2015 and, for the purposes of assessing damages, the scope and duration of the continued use until at least May 1, 2015. The Complaint avers the following facts:

- Despite an opportunity to renew the franchise relationship at a different location or assistance in selling, the Defendants did not renew and continued to use the Marks and Trade Dress in Henderson [#1 at ¶ 19];

- C&S did not cease using the Marks and the Trade Dress until after the March 31, 2015 expiration date [*id.* at ¶ 22];

- Defendants used the Marks in connection with the sale of goods and services identical to those offered by Big O and its franchisees at the location of the former Big O franchise at 828 South Boulder Highway, Henderson, Nevada 89015. [*id.* at ¶ 30].

Mr. O'Neil similarly stated in his Declaration, "Defendants continued to use the Marks and Trade Dress at the Henderson store and online after the Agreement had expired on March 31, 2015 at least until May 4, 2015." [#24-2 at ¶ 20]. At the evidentiary hearing, Mr. Bull testified that Defendants' did not shut down their operation as of March 31, 2015; that as of the April 15, 2015 letter, Big O was aware of his continuing operation, holding himself and representing himself as Big O; that Defendants continued to use the trademark through April until sometime in the month of May; and that Duane Freshnock, the franchise business consultant, verified such continuing action. [#34 at 21:11-14; 22:10-19; 23:7-11]. As part of the

Renewed Motion for Default Judgment, Big O supplied an April 27, 2015 letter from Mr. Brady

to Big O that indicates states:

> I have recieved [sic] and read your letter dated 4-15-15, we are not operating or
> soliciting our business as a Big O Tires Store. All products and Big O trademarks
> have been removed from 828 S. Boulder Hwy, Henderson, NV 89015.

[#39-5]. The letter, however, is hearsay and is insufficient to overcome Mr. Bull's testimony

under oath. *Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 4 (2d Cir.1970) (setting aside

default judgment where it was based entirely upon hearsay evidence); *Breaking the Chain*

*Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25, 32 (D.D.C. 2008) (observing that

"unless there are very unusual circumstances to justify it, the evidentiary material offered in

support of a final [default] judgment should consist of material within the personal knowledge of

the affiant and not hearsay."). Therefore, the facts to which Mr. Bull testified stand

uncontroverted before the court, and this court must accept such factual allegations as true. *See*

*Coosemans Denver, Inc. v. Red Tomato Specialty Produce, Inc.*, No. 08-CV-01074-MSK-CBS,

2009 WL 229645, at *1 (D. Colo. Jan. 29, 2009) (deeming well-pled facts as uncontested).

Accordingly, the court concludes that C&S continued operating its business as Big O Tires at

828 South Boulder Highway, Henderson, Nevada after March 31, 2015 until at least May 4,

2015, based on the unconverted factual assertions and testimony.

    As discussed before, a final default judgment cannot be entered against a party until the

amount of damages has been ascertained. *See Llewellyn v. Shearson Fin. Network, Inc.*, No. 08-

cv-00179-MSK-KLM, 2009 WL 497865, at *2 (citing *Herzfeld v. Parker*, 100 F.R.D. 770, 773

(D. Colo. 1984)). Adopting the May 4, 2015 date used by Big O in its original Motion for

Default Judgment [#24 at 8; #24-2 at ¶ 20] and the Renewed Motion [#39 at 8 ¶ 11],[9] there are approximately 34 days of unauthorized use of Big O's Marks.

Ongoing royalties normally received by the franchisor for a holdover period can be an accurate measure of trademark damages. *See Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1566-67 (11th Cir. 1986); *La Quinta Corp v. Heartland Props. LLC*, 603 F.3d 327, 341 & n.10 (6th Cir. 2010); *KFC Corp. v. Lilleoren*, 821 F. Supp. 1191, 1193 (W.D. Ky. 1993). In calculating trademark damages, courts have included both general royalties and contributions to advertising fees, so long as the same damages are not captured elsewhere. *See Century21 Real Estate, LLC v. Destiny Real Estate Props.*, No. 4:11-CV-38 JD, 2011 WL 6736060, at *6 (N.D. Ind. Dec. 19, 2011). Under Schedule B of the First Amendment to the Franchise Agreement, there is a matrix applied to each franchisee. [#1-2 at 71-78]. Mr. Bull testified that a five percent royalty to gross sales would apply to C&S [#34 at 31:10-32:5]; a four percent fee applied for the local marketing fund [*id.* at 33:16-18]; and a .85 percent fee for a national advertising fund [*id.* at 33:19-25].[10] While the court takes the well-pleaded facts in the complaint and from the testimony as true, the quantum of damages must be established by proof. *See Brill Gloria v. Sunlawn, Inc.,* No. CIV.A. 08-CV-00211MS, 2009 WL 416467, at *5 (D. Colo. Feb. 18, 2009)*, amended sub nom. Brill Gloria Haus- und Gartengerate GmbH v. Sunlawn, Inc.,* No. 08-CV-00211-MSK-MEH, 2009 WL 1220503 (D. Colo. Apr. 30, 2009) (citation omitted) ("Actual

---

[9] The Motion for Default Judgment uses May 4, 2015 as the end date for damages [#24 at 9], but Mr. Bull testified at the evidentiary hearing Big O was using May 1, 2015. [#34 at 13-17].

[10] The four percent rate for the local advertising fund is ascertainable from the Franchise Agreement [#1-2 at 25 § 15.03; 65 § 6.5], but this court relies upon Mr. Bull's testimony for the .85 percent *cf.* [*id.* at 24 § 15.02] and the royalty matrix relied upon to determine the five percent rate is illegible. [#1-2 at 74].

proof must support any default judgment for money damages where there is an uncertainty as to the amount."). Indeed, the district court cannot enter a final default judgment until it ascertains the amount of damages. *Herzfeld*, 100 F.R.D. at 773.

The Franchise Agreement required Defendant to file monthly reports together with payments of royalty fees and advertising contributions. [#1-2 at 26, § 16.03]. Mr. Bull testified that Defendants did not file a report during the month of April [#34 at 32:18-22]. The Declaration of Katarina Schickedanz, a financial analyst for Big O Tires, indicates that C&S reported the following gross revenues from March 2014 to February 2015:

| | |
|---|---|
| March 2014 | $120,687.00 |
| April 2014 | $105,230.00 |
| May 2014 | $130,030.00 |
| June 2014 | $133,320.00 |
| July 2014 | $114,464.00 |
| August 2014 | $ 96,478.00 |
| September 2014 | $106,641.00 |
| October 2014 | $100,502.00 |
| November 2014 | $ 80,068.00 |
| December 2014 | $ 72,184.00 |
| January 2015 | $ 86,440.00 |
| February 2015 | $109,913.00 |

[#39-1 at 2]. In reviewing the Franchise Agreement, this court did not find any provision that addressed how royalties or fees should be calculated in the absence of a monthly report. Accordingly, in absence of reported gross revenue for March or April 2015, this court finds that an average over the past twelve months, i.e., $104,663.00, is an appropriate base upon which to calculate royalties.[11] The annual average is also consistent with the last report filed, reflecting gross revenues in the amount of $109,913.00.

---

[11] In its original Recommendation, this court noted that both the Franchise Agreement and Mr. Bull referred to certain categories of sales that might be subject to a lower royalty rate, such as

Using $104,663.00 as a base for calculating royalties, this court finds that the calculation of $11,523.83, as reflected by Ms. Schnickedanz's Declaration, is appropriate. The number is derived by annualizing $104,663.00 and multiplying it by the royalty rate (9.85%), and dividing it by 365 days in a year, yielding a daily rate of $ 338.94 per day. There are thirty-four days at issue, bringing the total to $11,523.83. Accordingly, this court respectfully RECOMMENDS that judgment be entered in the amount of $11,523.83 for Big O's claim of trademark infringement.[12]

## III. Contract Claims

Big O also moves for default judgment as to its contract claims, Claim III against C&S for breach of contract of the Franchise Agreement, and Claim IV against Mr. Brady and Ms. Brady in their individual capacities as guarantors of the Franchise Agreement. [#24 at 10]. Under Colorado law, to prevail on a breach of contract claim, the party seeking to recover must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

The Complaint adequately pleads the existence of a contract and incorporates the Franchise Agreement and two of its amendments by attaching them. [#1 at ¶ 14; #1-2]. At the

---

sales to national accounts or "Gross Sales of Farm Class Tires." [#1-2 at 65 § 6.1; #34 at 32:6-11]. It also appears from the contracts that there might be an "Adjusted Gross Sales Royalty Rate" that differs. [#1-2 at 65]. Nevertheless, in the absence of any rebuttal evidence that demonstrates that Mr. Bull's testimony about the applicable royalties was incorrect, this court relies upon his uncontroverted testimony. *See supra*, p. 19.

[12] Though this amount is more than was sought in the original Motion for Default Judgment, it is supported by the evidence in the record.

evidentiary hearing, Plaintiff offered and the court admitted as evidence the Third Amendment to the Franchise Agreement, which is executed by C&S and guaranteed by Mr. Brady and Ms. Brady. [#37-9]. This court has reviewed each of the contractual documents, noted the signatures of Mr. Brady as President of C&S, and the signatures of Mr. Brady and Ms. Brady, individually as guarantors. [#1-2 at 42, 45, 47, 69, 86, 87; #37-9 at 2-3]. The Third Amendment provides that the Franchise Agreement will terminate on March 31, 2015. [#37-9 at 1]. Thus, the court concludes that there is a valid and enforceable contract. The court further finds, based on Mr. O'Neil's unconverted affidavit, Big O permitted C&S to carry out the franchise business during the effective period of the Agreement [#24-2 at ¶ 30]. In reviewing the Franchise Agreement, this court did not find any post-termination obligations on the part of Big O. [#1-2 at 34 § 20]. Therefore, this court concludes that Big O performed its duties under the Franchise Agreement.

The court now turns to the last two elements, i.e., the non-performance by defendant and resulting damages. With regard to non-performance, Big O alleges that C&S breached its post-termination obligations as set out in §§ 20.01(a), 20.01(b), 20.01(e), and 20.01(h) of the Franchise Agreement. Those sections set forth C&S' post-termination obligations, including:

- Cease to be a Franchisee of Big O and cease to operate the former Franchised Business under the Big O System. Franchisee shall not thereafter, directly or indirectly, represent to the public that the former Franchised Business is or was operated of in any way connected with the Big O System or hold itself out as a present or former Franchisee of Big O [#1-2 at 34 § 20.01(a)];

- Pay all sums owing to Big O [*id.* at 34 § 20.01(b)];

- Take such action as may be required by Big O to transfer and assign to Big O or its designee all telephone numbers, white and yellow page telephone references and advertisements, and all trade and similar name registrations and business licenses, and to cancel any interest which Franchisee may have in the same [*id.* at 34 § 20.01(e)]; and

- Franchisee shall immediately make available to Big O all customer lists as such was developed while a Franchisee [*id.* at 34 § 20.01(h)].

As discussed above, the unconverted facts pled that C&S continued to operate as Big O Tires after the expiration of the Franchise Agreement on March 31, 2015. In addition, the Complaint avers that C&S did not sign over the telephone numbers or provide the customer lists by the May 4, 2015 deadline. [#1 at ¶ 22]. Mr. O'Neil attested that as of the date of the Motion for Default Judgment (June 28, 2016), Defendants had still not taken the action required to transfer and assign all telephone numbers associated with the former franchise located at 828 South Boulder Highway, Henderson, Nevada. [#24-2 at ¶¶ 24-25]. Nor had Defendants provided customer lists to Big O. [*Id.* at ¶ 25]. Taking these unconverted facts as true, this court finds that C&S breached §§ 20.01(a), 20.01(e), 20.01(h) of its Franchise Agreement with Big O.

In its Recommendation for the original Motion for Default Judgment, this court found it was precluded from recommending that default judgment be entered as to the breach of contract claim due to the lack of foundation for the calculation for either the royalties owed or the products ordered but not paid for by C&S. [#38 at 21-22]. As discussed above, this court finds that $11,523.83 is an appropriate amount of damages arising from the trademark infringement. Upon review of the Declaration of Rhonda Ceballos [#39-2], this court finds that the ledger is properly supported by invoices but for four charges: (1) the April 14, 2015 charge of $35.00 for insufficient funds; (2) the April 21, 2015 charge of $35.00 for insufficient funds; (3) the April 6, 2015 credit for $ 1000; and (4) the January 12, 2015 credit for $ 2.11. [*Id.* at 7; #39-2]. Given the totality of these missing invoices in favor of Defendants, this court finds that $ 6327.60 is due and owing for product purchases; the Complaint adequately alleges that C&S failed to pay for these product purchases [#1 at ¶ 41], and the court's own analysis confirms that this amount

is distinct from the trademark royalties due and owing. [#39-2, #39-3]. The Franchise Agreement also provides for late fees in the amount of "interest equal to the lesser of the daily equivalent of eighteen percent (18%) per annum of such overdue amount per year, or the highest rate then permitted by applicable law, for each day such amount is past due." [#1-2 at 18, § 8.04]. Plaintiff claims $2,482.94 in interest, for the period through March 31, 2017, and interest accruing at $4.34 a day after March 31, 2017. [#39 at 10 ¶ 18, #39-6 at 1]. Indeed, the amount of interest calculated and sought on this same sum in the original Motion for Default Judgment was $1,182.65, as reflected by the ledger. [#34 at 43:18-21; #39-3]. Although the court assumes that this amount is determined by the particular due date for each individual invoice reflected at [#39-3 at 1], Plaintiff provides no explanation for this calculation, and this court cannot independently reconcile it. [#39 at 10 ¶ 18; #39-2].

In order not to further delay this Recommendation, this court simply RECOMMENDS judgment be entered in the amount of $6327.60, with prejudgment interest rate on that amount at 18% per annum from April 1, 2015, until the date of the judgment.[13]

## IV.    Breach of Personal Guaranties

In Claim IV, Big O seeks judgment against Mr. Brady and Ms. Brady as individuals based on their execution of personal guaranties to the Franchise Agreement. The original Franchise Agreement contained a "Guaranty of Franchisee's Agreement," as Schedule 3, in which the guarantor guarantees that "C&S Tires, Inc., a Nevada Corporation ("Franchisee") will perform during the term of the Franchise Agreement each and every covenant, payment, agreement and undertaking on the part of Franchisee contained and set forth in or arising out of

---

[13]   Big O did not seek breach of contract damages in the amount of $11,523.83, for unpaid royalties under the contract. [#39 at ¶ 15].

such Franchise Agreement." [#1-2 at 45; #1-2 at 45-48]. Mr. Brady and Ms. Brady separately affirmed their guaranties through a Third Amendment to the Franchise Agreement. [#37-9].

This court finds that the trademark infringement damages and the breach of contract damages both arise out the Franchise Agreement. Although Big O did not seek the unpaid royalties under its breach of contract claim, Defendants were barred under the Franchise Agreement from utilizing Big O's Marks after the termination of the Franchise Agreement. [#1-2 at 18, § 9.02]. Accordingly, this court respectfully RECOMMENDS that Mr. Brady and Ms. Brady be held jointly and severally liable for the trademark infringement damages and the breach of contract damages.

## V.      Injunctive Relief

In its Renewed Motion for Default Judgment, Big O continues to seek that telephone number (702) 565-9393 be assigned and that C&S' customer list be made available for inspection and copying. Both forms of relief are contemplated by the Post Termination Obligations as set forth in the Franchise Agreement. [#1-2 at 34, § 20.01(e), (h)]. It is uncontroverted that Defendants have neither assigned the telephone number, nor provided Big O a copy of their customer list, despite endeavoring to do so in Mr. Brady's own correspondence. *Compare* [#1 at ¶ 22, #24-2 at ¶ 23, #34 at 23:12-16] *with* [#39-5]. Therefore, this court respectfully RECOMMENDS that injunctive relief in form demanded by the Franchise Agreement, i.e.:

- Defendants take such action as may be required by Big O to transfer and assign to Big O or its designee the telephone number (702) 565-9393; and

- Defendants shall immediately make available to Big O all customer lists as such was developed while a Franchisee

be GRANTED.

## VI.    Post-Judgment Interest

Big O also seeks post-judgment interest in the amount of 18% per annum.  [#39 at 11]. As an initial matter, this rate is not appropriately applied to the trademark infringement damages (either prejudgment or post-judgment), because they do not arise under the contract.  Indeed, Big O specifically disclaimed such royalties under their breach of contract claim.  [#39 at 9 ¶ 15; #34 at 42:25-44:16].  Therefore, any post-judgment interest at the rate of 18% per annum is limited to the damages ascribed to the breach of contract, with the principal amount of $6327.60.  In the absence of a contractually determined rate, this court respectfully RECOMMENDS that both pre-judgment and post-judgment interest at the statutory rate as set by 28 U.S.C. § 1961 as to trademark infringement claim be applied.  *See Electrology Lab., Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1160-61 (D. Colo. 2016).

## VII.    Attorney's Fees and Costs

Finally, the court considers Big O's request for attorney's fees in the amount of $13,854.50 and costs in the amount of $569.39, for a total of $14,423.69, pursuant to § 27.02 of the Franchise Agreement.  [#39 at 10; #44].  That section provides:

> If Big O secures any declaration, injunction or order of specific performance pursuant to Section 27.01 hereof, if any provision of this Agreement is enforced at any time by Big O or if any amounts due from Franchisee to Big O are, at any time, collected by or through an attorney at law or collection agency, Franchisee shall be liable to Big O for all costs and expenses of enforcement and collection including, but not limited to, court costs and reasonable attorneys' fees, including the fair market value of any time expended by legal counsel employed by Big O.

[#37-2 at 39, § 27.02]. Section 27.01 contemplates actions by Big O to enforce the obligations of Franchisee upon termination or expiration of the Franchise Agreement. [*Id.* at § 27.01(a)(ii)]. Having determined that C&S breached the Agreement, and Mr. Brady and Ms. Brady have breached their respective guaranties, this court finds that Big O is entitled to reasonable attorney's fees and costs. In calculating a reasonable attorney's fee, this court applies the lodestar principles stated in *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). "The lodestar calculation is the product of the number of attorney hours reasonably expended and a reasonable hourly rate." *Id.* (internal quotations and citation omitted).

The first step in calculating a fee award is to determine the number of hours reasonably spent by counsel for the party seeking the fees. The burden of proof lies with the prevailing party seeking fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In determining what is a reasonable time in which to perform a given task, an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Reg'l Dist. Council*, 82 F. Supp. at 1246 (citing *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983) (overruled on other grounds by *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987))). The court then exercises its discretion to determine whether the attorney exercised appropriate billing judgment. *Reg'l Dist. Council.*, 82 F. Supp. 3d at 1245. Then, the court considers what a reasonable billing rate is for the attorneys who seek reimbursement of their fees. A reasonable billing rate has been defined as a rate that is reasonable and within the realm of rates charged by

other lawyers of similar skill and experience in the Denver metropolitan area. *Duran v. Koehler*, No. 10-CV-01569-REB-KMT, 2014 WL 4197578, at *3 (D. Colo. Aug. 25, 2014) (citing *Ramos*, 713 F.2d at 555).

Once a plaintiff carries his burden of establishing an appropriate amount of hours spent and a reasonable billing rate, those numbers are multiplied together to generate a lodestar amount. *See Robinson*, 160 F.3d at 1281. While the court may adjust the lodestar amount upward or downward to account for the specific factors presented by the case, including the success of the party seeking fees, the lodestar amount is generally presumed to be reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Robinson*, 160 F.3d at 1281. Courts need not account for each and every hour; the goal is to do "rough justice" using the Court's overall sense of a lawsuit. *Madrid v. Stellar Recovery, Inc.*, No. 15-CV-02553-MSK-NYW, 2016 WL 3220977, at *2 (D. Colo. June 3, 2016).

***Reasonableness of Time.*** As an initial matter, the court finds that because of its default judgment posture, this case should be considered as straightforward, i.e., there was no need for multiple strategies or responses to the maneuvering of the opposing parties, because Defendants did not respond or appear. In considering the Statement of Account submitted by Plaintiff in this matter, the court considers factors such as whether the fees pertain to tasks ordinarily billed to clients, whether the tasks were necessary, or whether there is redundant or excessive work being done. The court notes at the outset that Big O did not seek any fees associated with either the filing of the Renewed Motion for Default Judgment or the Supplement.

In reviewing the entries this court finds that the majority of the entries properly reflect "costs and expenses of enforcement and collection including, but not limited to, court costs and

reasonable attorneys' fees, including the fair market value of any time expended by legal counsel employed by Big O." A limited number of entries are either unwarranted, duplicative of other entries, or fail to provide adequate description for this court to assess their appropriateness:

| Date | Entry | Subtracted Hours | Reason for Recommendation |
|---|---|---|---|
| 6/24/15 | E-mail to B. Maciak | .1 | Insufficient information |
| 4/11/16 | Docket dates; e-mail to legal assistant on return of service | .1 | Attorney billing for clerical tasks[14] |
| 4/22/16 | Draft motion for entry of default | .5 | |
| 4/25/16 | Office conference with J. Akin regarding returns of service; review, revise and finalize motion for clerk's default | .3 | First motion for entry of default was deficient [#19], and counsel billed additional amounts for a second motion for entry of default |
| 4/25/16 | Draft and revise motion for entry of default and order entering default judgment; review pleadings and docket regarding same; conference with H. Bruno regarding the same and deadlines | 1.6 | First motion for entry of default was deficient [#19], and counsel billed additional amounts for a second motion for entry of default |
| 4/26/16 | Finalize consent to magistrate election | .2 | Attorney billing for clerical tasks; unwarranted given D.C.COLO.LCivR 40.1(c)(3)(a) that explicitly provides that civil actions in which a motion for default judgment is filed initially assigned directly to a magistrate judge shall be reassigned |

---

[14] *Stauffer v. NCC Bus. Servs., Inc.*, No. 13-CV-00243-PAB-KLM, 2013 WL 2444827, at *4 (D. Colo. June 5, 2013).

| | | | to a district court judge. |
|---|---|---|---|
| 4/26/16 | Draft and revise consent to jurisdiction of magistrate judge; legal research regarding same; conference with H. Bruno regarding same | 1.0[15] | Unwarranted given D.C.COLO.LCivR 40.1(c)(3)(a) that explicitly provides that civil actions in which a motion for default judgment is filed initially assigned directly to a magistrate judge shall be reassigned to a district court judge. |
| 6/7/16 | Review order from Court dismissing case; email to client | .1 | Unwarranted as there is no order from the court in this action dismissing case |
| 6/21/16 | Follow-up with S. Miller regarding R. O'Neil's signature | .1 | Attorney billing for clerical tasks |
| 6/27/16 | Called S. Miller regarding whereabouts of O'Neil declaration | .1 | Attorney billing for clerical tasks |
| 7/12/16 | Exchange e-mail with J. Bull | .1 | Insufficient information |
| 7/14/16 | Exchange e-mails regarding new hearing date; Office conference with legal assistant regarding court conflict; cleared calendar of J. Bull regarding revised date; review minute order and re-docketed hearing date | .3 | Attorney billing for clerical tasks |
| 7/19/16 | Docketed new hearing date | .1 | Attorney billing for clerical tasks |

[15] The block billing in this entry does not allow this court to determine how much time was allocated to legal research regarding consent to magistrate judge jurisdiction, but the applicable Local Rule is unambiguous that in a case where a motion for default judgment has been filed, the case will be reassigned to an Article III judge.

31

Accounting for these exclusions, this court finds that a reasonable time in the amount of 18.2 hours was expended by Mr. Bruno, and a reasonable time in the amount of 44.9 hours was expended by Ms. Akin.

***Reasonable Billing Rate.*** Mr. Bruno claims a rate of $325.00 per hour, based on his thirty two-years of practice. [#44-2 at 2]. Ms. Akin claims a rate of $205.00 per hour, based on her four years of commercial practice. Each is characterized as "practicing commercial litigation." [#44-2 at 2]. Beyond the statements in Mr. Bruno's affidavit that he is "familiar with the hourly rates charged in Denver in 2016 for commercial litigation," [*id.* at ¶ 7], Plaintiff submitted no additional evidence to substantiate the reasonableness of these fees. Respectfully, this court finds that an attorney's own uncorroborated statement regarding the reasonableness of his or her own fees is insufficient to establish that the billing rate claimed is reasonable.

Instead, this court looks to sources such as the Colorado Bar Association's Economic Survey Snapshot and other case law in this District. The most recent CBA Economic Survey is from 2012, with data from 2011.[16] As of 2011, the average billing rate of an attorney with more than 25 years of practice was $273.00 per hour, and for an attorney with five years or less was $182.00 per hour. The average billing rate of an attorney practicing Litigation (civil/commercial) was $261.00 per hour. The court notes that there is a trademark claim associated with this case, and the average billing rate for an attorney practicing intellectual property law was $284.00 per hour. With these data points and based on the undersigned Magistrate Judge's own experience, this court finds that a rate of $325.00 per hour for Mr. Bruno and $205 per hour for Ms. Akin, five to six years later, is reasonable.

---

[16] http://www.cba.cobar.org/repository/LPM%20Dept/Economic%20Survey/Snapshot%20Final%20Report.pdf

Using the lodestar method, this court calculates $5,915.00 in fees for Mr. Bruno's work in this action, and $9,204.50 for Ms. Akin, for a total of $15,119.50.  But Big O has only sought $13,854.50, having already discounted their billings.  *See e.g.*, [#37-1 at 3].  This court finds that the amount of $13,854.50 is a reasonable amount for fees, further corroborated by the award of a similar amount in a similar case out of the Eastern District of California.  *Big O Tires, LLC v. Brown*, No. 1:09CV01469OWWDLB, 2009 WL 3698508, at *4 (E.D. Cal. Nov. 4, 2009).  The court further finds that costs in the amount of $569.19 is also reasonable, noting that the bulk of those costs are attributable to the filing fee in this court and service on Defendants.  [#37-1 at 3].  Accordingly, this court respectfully RECOMMENDS that the default judgment include the amount of $14,423.69 for attorney's fees and costs.

## CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that:

(1)     Plaintiff Big O Tires, LLC's Renewed Motion for Default Judgment Against All Defendants [#39] be **GRANTED**; and

(2)     Default Judgment be **ENTERED** against all Defendants as follows:

(a)     The amount of $11,523.83 for Big O's claim of trademark infringement, with interest at the statutory rate as set by 28 U.S.C. § 1961 as to the trademark infringement claim from April 1, 2015 until the satisfaction of the judgment;

(b)     The amount of $6327.60 for Big O's claim for contract damages, with an interest rate on that amount at 18% per annum from April 1, 2015 until the satisfaction of the judgment; and

   (c)  The amount of $13,854.50 for Big O's reasonable attorney's fees and

$569.19 for Big O's reasonable costs.[17]

DATED: May 24, 2017     BY THE COURT:

             s/ Nina Y. Wang
             Nina Y. Wang
             United States Magistrate Judge

---

[17] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).